IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


RANDY WALKER                                                   PLAINTIFF


          v.                          CIVIL NO. 11-5116


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                 DEFENDANT


## MEMORANDUM OPINION

Plaintiff, Randy Walker, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.       Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on November 15, 2007, and January 16, 2009, respectively, alleging an inability to work since July 1, 2006, due to epilepsy, head injuries, amputated right biceps, and seizures.  (Tr. 53, 57, 65).  For DIB purposes, Plaintiff maintained insured status through September 30, 2009.  (Tr. 10, 48). An

administrative hearing was held on June 5, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 212-235).

By written decision dated February 23, 2010, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 12). Specifically, the ALJ found Plaintiff had the following severe impairment: visual field contraction. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels. However, the claimant has nonexertional limitations precluding work requiring fine visual acuity, exposure to extremes of heat, climbing ladders, ropes or scaffolds, and more than moderate exposure to work-place hazards such as untended moving machinery, heights, or other hazards consistent with normal seizure precautions.

(Tr. 14). With the help of a vocational expert, the ALJ determined Plaintiff could perform work in housekeeping, and as a hand packager. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on April 7, 2011. (Tr. 2-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 9).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

-2-

II.     **Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

-3-

AO72A
(Rev. 8/82)

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

## III.   Discussion:

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled because (1) the ALJ erred in failing to consider all of the claimant's impairments in combination; (2) the ALJ erred in her analysis and credibility findings in regard to Plaintiff's subjective complaints of pain; (3) the ALJ erred in finding that Plaintiff retained the RFC to perform a full range of work at all exertional levels; and (4) the ALJ erred in failing to fully and fairly develop the record. Defendant argues substantial evidence supports the ALJ's determination.

### A.   Combination of Impairments:

Plaintiff argues that the ALJ erred in failing to consider all of the claimant's impairments in combination.

The ALJ stated that in determining Plaintiff's RFC, she considered "all of the claimant's impairments, including impairments that are not severe." (Tr. 11). The ALJ further found that

-4-

the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Tr. 14). Such language demonstrates the ALJ considered the combined effect of Plaintiff's impairments. Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994).

### B.   Subjective Complaints and Credibility Analysis:

Plaintiff argues that the ALJ improperly disregarded Plaintiff's subjective complaints. Defendant argues that substantial evidence of record supports the ALJ's credibility findings.

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that his impairments were disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's alleged seizure disorder, the ALJ noted that Plaintiff reported that he experienced seizures two to three times a week. A review of the medical evidence failed to reveal that Plaintiff ever sought treatment for seizures during the relevant time period. The

-5-

record revealed that on January 23, 2008, Plaintiff reported to Dr. Rayetta Eaton during the consultative evaluation that he had experienced a seizure a few weeks prior to the evaluation, and then a year prior to that.  However the ALJ pointed out that the record failed to show that Plaintiff sought treatment for these seizures.  (Tr. 186-191).  The ALJ further pointed out that during the administrative hearing held on June 5, 2009, Plaintiff testified that he had not been treated for his seizures since 1992.  (Tr. 227-228).  The Court notes that Dr. Eaton stated that some consideration for a neurological check might be necessary based off of Plaintiff's report that he experienced seizures; however, as pointed out by the ALJ, there is no evidence to support that Plaintiff had ever sought treatment for seizures since 1992.  It is also noteworthy that the ALJ did consider Plaintiff's alleged seizures, as she included standard seizure precautions when determining Plaintiff's RFC.  Thus, the Court finds substantial evidence to support the ALJ's findings regarding Plaintiff's alleged seizure impairment.

While Plaintiff alleged an inability to seek treatment for his seizures due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds.  Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship).  Furthermore, the record revealed that Plaintiff sought treatment from the emergency room physicians, as well as Dr. Wm. Frank Webb, Plaintiff's treating physician, and at no time did he complain of experiencing on-going seizures.  As Plaintiff reported that he had last used marijuana as recently as May of 2009, it appears Plaintiff had some financial means and chose not to seek treatment.  (Tr. 207).

-6-

With regard to Plaintiff's partially amputated biceps, the ALJ pointed out that Plaintiff reported to Dr. Eaton in January of 2008, that this injury occurred in 1990. (Tr. 186). The ALJ noted that Dr. Eaton found Plaintiff had full range of motion in Plaintiff's spine and extremities and normal grip strength in Plaintiff's right hand.[1] The medical evidence revealed that in July of 2006, Dr. Webb noted that Plaintiff's extremities were healthy. (Tr. 172-173). The ALJ also pointed out that Plaintiff had worked for many years with this alleged disabling impairment. The Court notes that absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir.2005). The ALJ also noted that Plaintiff failed to report limitations caused by this impairment to his treating physicians. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's findings regarding Plaintiff's alleged partially amputated biceps.

With regard to Plaintiff's peptic ulcer disease, the medical evidence revealed that prior to the relevant time period, Plaintiff was diagnosed and treated for gastroenteritis, peptic ulcer disease, and erosive gastritis. (Tr. 147-167, 176-182). On June 26, 2006, Dr. Webb noted that Plaintiff's gastritis had healed "pretty good." (Tr. 174).

The medical evidence during the relevant time period revealed that on July 5, 2006, Plaintiff complained of a worsening of his ongoing stomach problems. (Tr. 172-173). Plaintiff reported he had a lot of blood in his stool and vomit. Plaintiff reported that it was ten times worse than the previous week. Plaintiff reported experiencing chills, a fever and the inability to sleep for the past three days. Dr. Webb noted that Plaintiff had documented peptic ulcer disease and severe fundal gastritis from a biopsy. Upon examination, Dr. Webb noted Plaintiff's

---

[1]The medical records indicated that Plaintiff had a boxer's fracture of the left hand at the time of the evaluation.

abdomen was soft with active bowel sounds; that Plaintiff's extremities were healthy; and that Plaintiff was neurologically grossly intact. Dr. Webb diagnosed Plaintiff with peptic ulcer disease, acute gastritis and irritable bowel syndrome. Plaintiff was prescribed Librax, Valium, MS Contin and Zyprexa. On August 1, 2006, Dr. Webb noted that objectively Plaintiff's physical examination was healthy. (Tr. 170). There is no medical evidence to show that Plaintiff sought treatment for his peptic ulcer disease again during the relevant time period. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's findings regarding Plaintiff's alleged peptic ulcer disease.

        With regard to Plaintiff's alleged head injury, the ALJ noted that Plaintiff reported a head injury in the distant past, and again in 2007, for which he was admitted into the hospital. The ALJ pointed out that the only medical evidence of a hospital admission in 2007, was when Plaintiff was brought to the emergency room after being involved in a "brawl" at his girlfriend's house in May of 2007. (Tr. 126-146). The records revealed that on May 20, 2007, Plaintiff presented to the Northwest Medical Center emergency room and reported he had been involved in a fist fight. Dr. Jerry S. Dorman noted that Plaintiff had been brought into the emergency room after being severely beaten about the head and neck. Dr. Dorman noted that an initial evaluation revealed extensive abrasions, contusions, and lacerations about the head and neck. Dr. Dorman noted Plaintiff also had a fracture of the left rib. Plaintiff's lacerations were sutured in the emergency room, and Plaintiff was admitted for observation. Plaintiff was noted to have had a previous hospitalization for a bleeding ulcer for which he took Carafate. Plaintiff reported that he worked vaccinating cattle and putting roofs on barns. Plaintiff was discharged on May 21, 2007. The ALJ also pointed out that along with no treatment records for a head injury, the

-8-

medical evidence failed to show any objective testing of a head injury during the time period in question. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's findings regarding Plaintiff's alleged head injury.

With regard to Plaintiff's alleged depression and anxiety, it is noteworthy that Plaintiff did not allege a disabling mental impairment in his application for benefits. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (failure to allege disabling mental impairment in application is significant, even if evidence of depression is later developed). In addressing Plaintiff's mental impairments, the ALJ noted that the evidence failed to demonstrate that Plaintiff sought or received ongoing and consistent mental health treatment during the relevant time period. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). The medical evidence revealed that Dr. Webb diagnosed Plaintiff with anxiety on August 1, 2006; however when Dr. Webb treated Plaintiff in June of 2007 and March of 2008, there was no mention of anxiety. (Tr.170). The ALJ also pointed out that when Plaintiff was examined by Dr. Patricia Walz in September of 2009, Dr. Walz's opinion regarding Plaintiff's Computerized Assessment of Response Bias (CARB) test results was as follows:

> This test indicated that he gave extremely poor effort. The effort was far below individuals who have sustained a severe brain injury and was within the range of random responding. The report stated, "A 3 year old child who is simply pressing keys randomly could easily obtain such a performance. Individuals who are attempting to simulate, exaggerate, or malinger cognitive deficits may obtain this profile[; this] indicates a complete lack of compliance with the assessment process." Therefore, test results are suspect.

(Tr. 209). After evaluating Plaintiff, Dr. Walz summarized her findings as follows:

AO72A
(Rev. 8/82)

Mr. Walker's performance on a comprehensive neuropsychological evaluation was considered invalid because of his poor performance on the CARB. Nonetheless, even if he was giving poor effort he was able to perform in the borderline range on the IQ test which would rule out mental retardation. His achievement skills were in the low average to average range with the exception of math reasoning. He did poorly on a test of concept formation and mental flexibility but otherwise his cognitive skills were in the average range, including memory. He reported depression and anxiety related to his seizure disorder. Diagnostic impression is of Anxiety and Depression secondary to Medical Condition (Seizures). He also reported anger control issues which have affected his functioning in that he's lost jobs and been to prison.

(Tr. 211). The ALJ found that based on Plaintiff's lack of mental health treatment, the lack of a valid diagnosis, and Dr. Walz's report concerning Plaintiff's veracity that Plaintiff's mental impairments were not severe. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's findings regarding Plaintiff's alleged mental impairments.

With regard to Plaintiff's alleged back and leg pain and arthritis, the ALJ noted that there was no treatment, diagnosis, diagnostic studies, or imaging in Plaintiff's medical records to support Plaintiff's allegations of disabling pain. The medical evidence revealed that in August of 2006, Dr. Webb noted that Plaintiff's physical examination was healthy. (Tr. 170). The ALJ noted that in January of 2008, Dr. Eaton found Plaintiff to have a full range of motion of his spine and extremities. Dr. Eaton further stated " I do not appreciate any physical limitations once vision is evaluated." (Tr. 190). While Dr. Webb noted that Plaintiff complained of aches and pain in March of 2008, and diagnosed Plaintiff with arthritis, he did not place any limitations on Plaintiff. (Tr. 195). In July of 2009. Dr. Blake N. Geren noted Plaintiff moved about the examination room without assistance. (Tr. 200). It is noteworthy that Plaintiff did not seek treatment for these alleged impairments again during the relevant time period. Based on the

-10-

AO72A
(Rev. 8/82)

record as a whole, the Court finds substantial evidence to support the ALJ's findings regarding Plaintiff's alleged back and leg pain and arthritis.

As for Plaintiff's visual impairment, the ALJ noted that Dr. Geren found Plaintiff's best-corrected visual acuity was 20/20 in both eyes.  (Tr. 200-202).  Dr. Geren further noted that Plaintiff had a visual field constriction in his right eye.  The ALJ noted these findings and included limitations for the visual field constriction in the RFC determination.  Based on the record as a whole, the Court finds substantial evidence to support the ALJ's findings regarding Plaintiff's visual impairment.

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities.  A review of the record revealed that in a Function Report dated April 24, 2008, Plaintiff reported that he could take care of his personal needs when he was not dizzy; that he could prepare simple meals; and that he could perform household chores when he was not dizzy.  (Tr. 89-96).  A review of the record revealed that in May of 2007, Plaintiff reported that his job consisted of vaccinating cattle and putting roofs on barns.  (Tr. 128).  Plaintiff was also noted to have custody of his two daughters, who apparently lived with his mother yet he saw them everyday.

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity.  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

-11-

### C.      The ALJ's RFC determination:

Plaintiff argues that the ALJ erred in determining that Plaintiff could perform a full range of work at all exertional levels.  Defendant argues that substantial evidence of record supports the ALJ's RFC finding.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ considered the medical assessments of non-examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when the ALJ determined Plaintiff maintained the RFC to perform work at all exertional levels with some non-exertional limitations.  Plaintiff's capacity to perform work at all exertional levels with limitations is supported by the fact that the medical evidence does not indicate that Plaintiff's examining physicians placed restrictions on his activities that would preclude performing the RFC

-12-

determined.  See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).  Based on our above discussion of the medical evidence and Plaintiff's activities during the relevant time period, the Court finds substantial evidence of record to support the ALJ's RFC determination.

**D.     Fully and Fairly Develop the Record:**

The Court rejects Plaintiff's contention that the ALJ failed to fully and fairly develop the record.  While an ALJ is required to develop the record fully and fairly, see Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir.2000) (ALJ must order consultative examination only when it is necessary for an informed decision), the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period.  See Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

**E.     Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work in housekeeping, and as a hand packager.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

-13-

**IV.**   **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 18th day of June 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)